# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| SHEILAH MALLORY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | NO. 3:16-cv-00639 |
| ) | CHIEF JUDGE CRENSHAW |
| CATERPILLAR FINANCIAL ) | |
| SERVICES CORP., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Sheilah Mallory brought this action against her current employer, Caterpillar Financial Services Corporation ("Caterpillar"), alleging multiple violations of federal and state law stemming from her employment. (Doc. No. 1.) Before the Court is Caterpillar's Motion for Summary Judgment. (Doc. No. 28.) For the following reasons, Caterpillar's motion is **GRANTED**.

I. UNDISPUTED FACTS

Mallory is a fifty-two-year-old African American female who works at Caterpillar in Nashville, Tennessee. (Doc. No. 36 at 1-2.) Caterpillar hired Mallory in 1996 as an Associate Tax Accountant. (Id. at 2.) In 2008, Mallory worked as an Accountant III with a salary grade of 7 for Caterpillar. (Doc. No. 38-2 at 20.) Her supervisor, Cathy Brindos, rated Mallory's performance as "3B," which means she had a "Valued Performance," and Dawn Couch approved that rating. (Id. at 20, 27.) In 2009, Brindos rated Mallory's performance as "3C," which also means she had a "Valued Performance," and a supervisor approved that rating. (Doc. No. 38-4 at 6-14.) A grade of "3B" was the middle of the acceptable performance, while a grade of "3C" was the lower end of an acceptable performance. (Doc. No. 30-2 at 12.)

*1. Mallory's Demotion*

On May 1, 2010, Alyssa Pagel became Mallory's direct supervisor. (Doc. No. 36 at 2.) Pagle created an interim review document, dated June 9, 2010, rating Mallory as a "4," which means "Needs Improvement." (Doc. No. 38-4 at 16.) It is unclear from the record why Pagel's mid-year evaluation of "4" is the only evaluation in the record, or even why Pagel did a mid-year review. Pagel testified that Brindos would have completed the mid-year evaluation in 2010 because she was Mallory's supervisor for the majority of the year. (Doc. No. 30-2 at 12.) According to Pagel, Brindos rated Mallory as a "3C" in the mid-year evaluation for 2010. (Id. at 6.) Based on the "3C" rating, as well as Pagel's observations of Mallory, Pagel decided to put Mallory on a performance improvement plan. (Id.) Mallory believes that the "false" mid-year evaluation of a "4" led Pagel to place her on the performance improvement plan, and she would not have with Brindos' "3C" rating. (Doc. No. 36 at 4-5.) While Pagel was the financial statements manager, she never placed any other employee, all white females, on a performance improvement plan. (Doc. No. 30-2 at 24.)

At the end of the 2010, Pagel rated Mallory as a "4 – Needs Improvement," which Dawn Couch approved. (Doc. No. 30-4 at 9, 17.) As a result, in 2011, Caterpillar gave Mallory two choices: stay in her current job in a salary grade 7 but go through her performance improvement plan again, or take a demotion to an Accountant II position at a salary grade 6. (Doc. No. 30-1 at 23.) With the demotion, Mallory would be able to keep her salary, but her incentive compensation would decrease from twelve percent to nine percent. (Id.) Mallory accepted the demotion, effective February 1, 2011. (Id.; Doc. No. 36 at 6.)

On April 7, 2011, Mallory filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging age discrimination in her demotion. (Doc. No. 36 at

2

18.) On August 15, 2012, the EEOC sent Mallory a Right to Sue letter, but Mallory chose not to file a lawsuit. (Id. at 19.)

   2. *Job Performance After Demotion*

Effective March 11, 2011, Kimberly Coots, a female over the age of 40, became Mallory's direct supervisor. (Doc. No. 36 at 6, 8.) For the calendar year 2011, Coots rated Mallory as a "3C – Valued Performance," which Pagel approved. (Id. at 6-7, Doc. No. 30-3 at 15.) On February 24, 2012, Mallory filed a charge of discrimination with the EEOC, alleging race and age discrimination and retaliation. (Id.) She alleged that she received a poor evaluation since her first charge, her managers stand around watching her and whisper, and that she was the only employee not to receive a pay raise in the past three years. (Id.) Mallory alleged that her failure to receive a raise in 2012 was based on discrimination because of her race and age. (Id.) On December 18, 2012, the EEOC sent Mallory a Right to Sue letter, again Mallory did not file a lawsuit. (Id.)

For the calendar year 2012, Coots rated Mallory as "Expected Level of Performance," which her manager approved after a consensus review process. (Doc. No. 36 at 7.) For the calendar year 2013, Coots rated Mallory as "Expected Level of Performance," which her manager approved after a consensus review process. (Id.) Coots' ratings of Mallory were based on Coots' observation and assessment of Mallory's work performance and effort. (Id.) Mallory's race, sex, and/or age and any charges of complaints of discrimination she might have made played no role in Coots' assessment of Mallory's performance. (Id.)

On September 26, 2013, Coots updated Mallory's "Employee Talent Profile Report." (Doc. No. 30-3 at 3; 29.) In the report, she stated that Mallory was currently at her potential level, and she was not promotable. (Id. at 29.) She noted that Mallory had a strong desire to pursue a Salary Grade 6 Credit Analyst position, but that was not realistic because she wanted to avoid customer-

facing positions within the business. (Id.) However, after Mallory applied for the Credit Analyst position and David Sopko told Mallory that she did not get the position because she was demoted and currently rated as not promotable, Coots, Pagel, and Rachel Stearn met with Mallory and stated that they did not know who put those comments in the system. (Doc. No. 30-1 at 12.) Coots never said anything to Mallory that suggested Coots was biased against Mallory because of her race, gender, or age. (Doc. No. 36 at 8.)

Effective March 1, 2014, Michelle Wooten became Mallory's supervisor. (Id. at 9.) For the calendar year 2014, Wooten rated Mallory as at her "Expected Level of Performance," which Wooten's manager approved through the consensus review process. (Id.) Wooten's rating for Mallory was based on Wooten's observation and assessment of Mallory's work performance and overall work effort. (Id.) Mallory's race, sex, age, and any charges or complaints of discrimination played no role in Wooten's assessment of Mallory's performance. (Id.) Separate from the performance review process, Wooten completed Mallory's Employee Talent Profile Report on August 9, 2014. (Id.) In the report, Wooten identified that Mallory was currently at her potential level and indicated that Mallory was not promotable. (Id.) Again, Wooten's assessment of Mallory's potential was based on Wooten's observation and assessment of Mallory's performance and capabilities, and Mallory's race, sex, age, and/or any charges or complaints of discrimination played no role in Wooten's assessment of Mallory's job potential. (Id. at 10.)

At one point during Wooten's tenure as Mallory's supervisor, she and Gwen Rowland attempted to change Mallory's journal to show her as late. (Doc. No. 30-1 at 40.) Ultimately, they did not succeed, and this dishonest attempt was one of the reasons Caterpillar moved Wooten to a different department the following year. (Id.)

Effective January 1, 2015, Allen Patterson became Mallory's supervisor, and currently remains her supervisor. (Doc. No. 36 at 10.) Patterson rated Mallory as at her "Expected Level of Performance," which his manager approved through the consensus review process. (Id.) Patterson's rating of Mallory was based on his observation and assessment of Mallory's work performance and overall work effort. (Id.) Mallory's race, sex, age, and any charges or complaints of discrimination played no role in his assessment of Mallory's performance. (Id.)

In October 2015, Mallory asked Patterson why no manager had rated Mallory as promotable. (Id. at 11.) Patterson met with Mallory to explain the reasons, and sent a follow-up email after the meeting to reiterate the reasons. (Id.) The email stated that Mallory has not "demonstrated the skills necessary for the next level position." (Id.) It further stated that in the time Patterson has been the supervisor, he noted that Mallory has done a good job on "routine tasks but need to improve in some areas before [she is] ready for the next level . . . ." (Id.) Patterson concluded that Mallory was "well placed at this time." (Id.) Mallory has no reason to believe Patterson is biased against black employees. (Id.)

### 3. *Mallory's Attempt to Transfer*

In 2013, 2014, and 2015, Mallory applied for a lateral transfer to a Credit Analyst position in the North American Business Center (the "Business Center"), a department within Caterpillar separate from the Accounting Department. (Id. at 12-13.) Mallory would not be entitled to a pay increase had she received the transfer. (Id. at 13.) In 2013, while Caterpillar judged Mallory to be minimally qualified for the position, it, through the hiring manager Karen Page, ultimately did not select her. (Id.) Instead, it selected a black female and two white males. (Id.) All three selected candidates had experience working in a credit or sales support function within the Business Center. (Id.) In 2014, David Sopko, the new hiring manager, interviewed Mallory for the position, but

ultimately selected a black male and a white male. (Id.) One of the hired candidates was the liaison between the Credit and Documentation departments prior to his transfer, while the other had eight years of banking experience and had been providing business support to customers and financial analysis support to Territory Managers and Sales Representatives. (Id. at 13-14.) In 2015, Sopko again interviewed Mallory, but did not select her. (Id. at 14.) Sopko instead selected a white male who had been analyzing loan documents since his hiring and had eight years' banking experience. (Id.)

Sopko met with Mallory at least once after hiring other candidates for open Credit Analyst positions. (Doc. No. 36 at 14; Doc. No. 30-1 at 12.) He told Mallory that she could improve her prospects of obtaining a future open Credit Analyst position by seeking other credit experience. (Doc. No. 30-1 at 12.) He also told her that he saw in her file that she had been demoted due to her performance, lacked customer service skills, and was rated as non-promotable, which were the reasons he did not hire her for the open positions. (Id.; id. at 49) Sopko swore that he hired other candidates because they were better qualified with more relevant experience for the open positions. (Doc. No. 30-6 at 3.) He also swore that he recommended to Mallory that she pursue a sales support position with the Business Center to increase her chances of being selected for a future credit analyst position. (Id.) Mallory does not allege that Sopko considered Mallory's race, gender, age, and/or national origin in his decisions to select other candidates for the credit analyst positions. (Doc. No. 36 at 15.) Instead, she alleges that Coots' non-promotable notation in her file and her demotion were motivated by discriminatory purposes. (Id.) At the time Sopko considered Mallory for the credit analyst positions, he had no knowledge of any charges of discrimination or retaliation that Mallory previously had raised against Caterpillar. (Id.)

On July 14, 2015, Mallory filed a charge of discrimination with the EEOC alleging race, gender, age, and national origin discrimination, as well as wage discrimination. (Doc. No. 36 at 19.) Mallory alleged that she did not receive a credit analyst position while Caterpillar hired "other nonblack employees with the same or less experience . . . ." (Id. at 19-20.) Mallory alleged that Coots and Wooten are responsible for being denied the transfer. (Id. at 20.) However, she admitted that she did not know why Caterpillar selected the other candidates over her. (Id.) She also alleged that "white employees, on average, make more than black employees in the same position, even when the white employees have the same or less experience." (Id.) Further, she alleged that Caterpillar gave her work above her pay grade while paying her less than her white coworkers who did not possess degrees. (Id.) Mallory also alleged that her supervisors subjected her to unwarranted comments and abusive conduct, such as labeling her as "non-promotable." (Id.) However, she admits that at no time did any Caterpillar employee, supervisor or otherwise, made any racial statements to Mallory. (Id. at 21.) [1]

4. *Mallory's Salary*

As of the date of the filing of the Complaint, and since April 1, 2015, Mallory made $73,284.00 per year, making her the fourth-highest paid Accountant II at Caterpillar. (Id. at 17.) From April 1, 2014, until April 1, 2015, Mallory made a salary of $70,800.00, making her the

---

[1] In the Statement of Undisputed Facts, Mallory claims that Caterpillar retaliated against her for filing her first and second EEOC charges and because of her age. (Id.) Her age claim, although not in her Complaint, derives from her belief that Caterpillar targeted her because she was a "Sunset" employee—an employee who has worked there for ten years and is older than forty, so Caterpillar is continuing to contribute to their pension under an older, more generous pension policy. (Id.) The alleged age harassment included the managers watching everything the Sunset employees do, and "nitpicking every little thing . . . ." (Id.) It also included Caterpillar assigning her certain work duties, including accounts that were past due; calling her once at home while she was on disability leave; sending her a "Notice of Returned Reconciliation" to address a mistake in her work; writing notes about Mallory's mistakes and notifying her managers; and micromanaging her. (Id.) Her managers would also not speak to her, but then run up to her to tell her to do something urgently. (Doc. No. 30-1 at 45.) She cites as proof that Leah Ann Zirkle is a Sunset employee, and Caterpillar demoted her. (Id.)

second-highest paid Accountant II at Caterpillar. (Id.) From April 1, 2013, to April 1, 2014, Mallory made a salary of $68,400.00, making her the second-highest paid Accountant II at Caterpillar. (Id.)

The three employees who currently make more money than Mallory in Accountant II positions are Zirkle, a female, Charles Keisling, a male, and Zachary Cox, a male. Caterpillar hired Zirkle on September 30, 1991. (Doc. No. 30-7 at 38.) From December 1, 2012, until December 1, 2013, Zirkle worked on a temporary assignment in Credit Excellence, which is at a Salary Grade 7. (Id.) When Caterpillar demoted her to the Accountant II position, at Salary Grade 6, Zirkle retained her salary. (Id.) Caterpillar hired Keisling on August 11, 2008. (Id. at 19.) From July 1, 2012, until April 1, 2014, Keisling worked as an Auditor, which is at Salary Grade 7. (Id.) On March 1, 2015, Caterpillar demoted him to the Accountant II position, at Salary Grade 6, but he retained his salary. (Id.) Caterpillar hired Cox on June 18, 2012. (Id. at 17.) From January 1, 2014, until April 1, 2015, Cox was paid on a monthly basis at Salary Grade 20.[2] (Id.) After his transfer on June 1, 2015, to the Accountant II position, he retained his monthly salary as an annual salary. (Id.)

II.     STANDARD OF REVIEW

In reviewing a motion for summary judgment, this Court will only consider the narrow question of whether there are "genuine issues as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A motion for summary judgment requires that the Court view the "inferences to be drawn from the underlying facts . . . in light most favorable to the party opposing the motion." Matsushita Elec. Ind. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)).

---

[2] Contrary to Mallory's assertion, Cox still worked full-time, as evidenced by the "F" in the "FP" column in the Chronological Job History form. (Id.)

The opponent, however, has the burden of showing that a "rational trier of fact [could] find for the non-moving party [or] that there is a 'genuine issue for trial'" Matsushita, 475 U.S. at 587. "The mere existence of a scintilla of evidence in support of plaintiff's position, however,] will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson v. Liberty Lobby, 477 U.S. 242, 252 (1986). If the evidence offered by the nonmoving party is "merely colorable," or "not significantly probative," or not enough to lead a fair-minded jury to find for the nonmoving party, the motion for summary judgment should be granted. Anderson, 477 U.S. at 479-52. "A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." Hill v. White, 190 F.3d 427, 430 (6th Cir. 1999) (citing Anderson, 477 U.S. at 247-49).

III. ANALYSIS

The Complaint raises six separate causes of action against Caterpillar: (1) violations of the Civil Rights Act of 1991, 42 U.S.C. § 1981; (2) racial discrimination and hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* (Title VII); (3) retaliation in violation of Title VII; (4) race and gender discrimination and hostile work environment in violation of Title VII; (5) race and gender discrimination in violation of the Tennessee Human Rights Act ("THRA"), Tennessee Code Annotated § 4-21-101 *et seq.*; and (6) violation of the Equal Pay Act, 29 U.S.C. § 206(d). (Doc. No. 1.) Caterpillar moves for summary judgment on all claims. (Doc. No. 28.)

A. STATUTES OF LIMITATIONS

Caterpillar first moves for summary judgment on all claims brought under § 1981 that arose over four years prior to the filing of the Complaint, all claims brought under Title VII and the THRA that arose more than 300 days prior to the July 2015 EEOC charge, and claims brought

under the Equal Pay Act that arose over two years prior to filing the Complaint because they are time-barred under the statutes of limitations. (Doc. No. 31 at 4-6.)

   *1. Discrimination Claims*

Mallory does not dispute the four year statute of limitations under § 1981 or that claims brought under Title VII and the THRA that arose more than 300 days prior to the EEOC charge are time-barred, but instead argues that her 2010 demotion was illegal and that Caterpillar fraudulently concealed Brindos' mid-2010 evaluation of her, which tolls Title VII's statute of limitations. (Doc. No. 35 at 6.) Mallory does not argue that tolling applies to § 1981's or the THRA's statutes of limitations. (See Doc. No. 35 at 5-7 (arguing that the Title VII statute of limitations should be tolled for fraudulent concealment)); Campbell v. Grand Trunk W. R.R. Co., 238 F.3d 772, 775 (6th Cir. 2001) (after the defendant proves the statute of limitations has run, the plaintiff has the burden to establish an exception to the statute of limitations).

To toll the statute of limitations under Title VII because of fraudulent concealment, the plaintiff must prove (1) that the defendant actively concealed its wrongful conduct from the plaintiff; (2) that concealment prevented the plaintiff from discovering the defendant's wrongdoing during the limitations period; and (3) the plaintiff exercised diligence in trying to uncover the defendant's conduct. Ruth v. Unifund CCF Partner, 604 F.3d 908, 910 (6th Cir. 2010) (quoting Egerer v. Woodland Realty, Inc., 556 F.3d 415, 422 (6th Cir. 2009)).

Here, Mallory cannot establish fraudulent concealment on her 2010 wrongful demotion claim to toll the statute of limitations under Title VII. First, Mallory cannot present facts sufficient for a reasonable jury to conclude that Caterpillar actively concealed its allegedly-fraudulent mid-year evaluation from her. All she can prove, in the light most favorable to her, is that Brindos' mid-year evaluation existed, and now it does not. Caterpillar did not attempt to conceal this

evaluation. Rather, Pagel testified in her deposition that Brindos rated Mallory as a 3-C on the mid-2010 evaluation, and that Brindos would have completed the evaluation because she supervised Mallory for the majority of the first half of the year. As there is no evidence of active concealment, the Court cannot toll the statute of limitations on this ground.

Even if there were active concealment of wrongful conduct, there are no facts in the record to show that the concealment prevented Mallory from discovering Caterpillar's wrongdoing during the limitations period. Instead, Mallory actually filed a timely charge of discrimination during the limitations period in 2011 alleging the alleged wrongful termination based on discrimination, and the EEOC issued Mallory a Right to Sue letter on that charge. Mallory chose not to file a complaint based on that charge, which would have allowed her to go through discovery as she did here. As such, the Court cannot find that the concealment prevented Mallory from discovering Caterpillar's wrongdoing at that time.

Third, Mallory did not exercise due diligence in uncovering Caterpillar's allegedly-fraudulent conduct. Mallory filed two previous EEOC charges of discrimination beginning in 2011, but did not file the Complaint until 2016. There was ample opportunity to file a complaint prior to 2015, go through discovery, and discover Brindos' mid-2010 evaluation. Accordingly, the Court cannot find that Mallory exercised due diligence in uncovering Caterpillar's conduct. As the undisputed facts show that Mallory cannot establish any of the three elements of fraudulent concealment to toll the Title VII statute of limitations, the Court does not toll the statute of limitations.

In sum, Mallory brought a timely EEOC charge in 2011. At that time, she knew that Pagel gave her a negative mid-year evaluation in 2010 despite only being her manager for two months; that Pagel discriminatorily put her on a performance improvement plan; and that Caterpillar

demoted her, all based on discrimination. The EEOC issued Mallory a Right to Sue notice based on these allegations, and Mallory chose not to bring a lawsuit on those. Mallory cannot now attempt to revive the claim that she could have—and possibly should have—brought at that time. The Court cannot toll the statute of limitations on this claim.

As such, Mallory's race discrimination and retaliation claims under § 1981 must have arose on or after March 22, 2012. Mallory's Title VII and THRA claims must have arose on or after September 18, 2014.

   2. *Equal Pay Act Claim*

Caterpillar further argues that it is entitled to summary judgment on Mallory's Equal Pay Act claims that arose two years prior to the filing of the Complaint. (Doc. No. 31 at 6.) Mallory does not contest this argument, and the Court agrees that all claims that arose prior to March 22, 2014, are time-barred under 29 U.S.C. § 255(a).

   B. AGE/RACE/GENDER DISCRIMINATION

Caterpillar argues that Mallory cannot succeed on any of her § 1981 or Title VII claims because she cannot show an adverse employment action, that similarly situated employees were treated differently than her, or that its legitimate, non-discriminatory reason for deciding not to transfer her was pretext. (Doc. No. 31.) Mallory argues that her 2011 demotion is an adverse employment action under the Lily Ledbetter Fair Pay Act, 42 U.S.C. § 2000e-5, and she can prove pretext. (Doc. No. 35.) She does not identify any similarly situated employee who was treated differently than her. (Id.)

Under both § 1981 and Title VII, when an employee attempts to use indirect evidence to prove discrimination, the Court applies the familiar burden-shifting test announced in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Barrett v. Whirlpool Corp., 556 F.3d 502, 512

(6th Cir. 2009); Geiger v. Tower Auto., 579 F.3d 614, 622 (6th Cir. 2009). Under Title VII, Mallory must prove that "(1) [s]he was a member of a protected class, (2) [s]he suffered an adverse employment action, (3) [s]he was otherwise qualified for the position, and (4) [s]he was replaced by someone outside the protected class or treated differently than a similarly situated, non-protected employee." Deleon v. Kalamazoo Cty. Rd. Comm'n, 739 F.3d 914, 918 (6th Cir. 2014). Tennessee courts use the same standard as Title VII and § 1981 in evaluating THRA claims, Newman v. Fed. Exp. Corp., 266 F.3d 401, 406 (6th Cir. 2001).

Taking the facts as generously as possible in favor of Mallory, she argues that Pagle destroyed a positive employment evaluation and replaced it with a negative one. Pagle used that negative evaluation to place Mallory on a performance improvement plan that she was destined to fail. Pagle then used the failing of the performance improvement plan to force Mallory to choose to be demoted. At some point, one manager secretly placed a "non-promotable" notation in Mallory's file, and every other manager has kept it there, forcing her to stay in a job she hates to this day. Pagle, Plaintiff beliefs, did all this with a discriminatory motive.

Assuming without deciding that Mallory suffered a timely adverse employment action, which the Court highly doubts, Mallory cannot prove a prima facie case because she does not prove that any similarly-situated employee was treated differently than her.[3] Mallory does not even attempt to argue that Caterpillar treated her differently than a similarly situated, non-protected employee. (Doc. No. 35.) The only place that Mallory discusses any non-protected employees in the Statement of Undisputed Facts (Doc. No. 36) is when discussing which employees received a

---

[3] Mallory attempts to state an adverse employment action by stating that under the Fair Pay Act, every paycheck she received after her demotion was a new adverse employment action because she is making less incentive pay. 42 U.S.C. § 2000e-5(e)(3)(A). However, the Fair Pay Act only applies to Title VII wage discrimination claims, which Mallory does not bring. Morrow v. L&L Prods., Inc., 945 F. Supp. 2d 835, 848 (E.D. Mich. 2013); see also Mahar v. Int'l Paper Co., 600 F. Supp. 2d 940, 950 n.5 (W.D. Mich. 2009) (compiling cases). As such, the Fair Pay Act does not apply to her alleged adverse employment action.

transfer to the Credit Analyst positions and which employees had a higher salary than her.[4] However, it is undisputed that Caterpillar hired a black female and a black male for Credit Analyst positions, negating any allegation that her race or gender played any part in Caterpillar's decision. Additionally, the employees that made a higher salary than Mallory did so because Caterpillar allowed them to retain their salary after demotion, as it did for Mallory in 2011. As such, in any of the alleged-adverse employment actions discussed above, Mallory does not identify any similarly situated, non-protected employee that Caterpillar treated differently than her.[5] Caterpillar is therefore entitled to summary judgment Mallory's discrimination claims.

C. REMAINING CLAIMS

Caterpillar argues that it is entitled to summary judgment on the hostile work environment, retaliation, and Equal Pay Act claims. (Doc. No. 31.) Mallory does not respond to these arguments argument. (Doc. No. 35.) Failure to respond to an argument indicates that there is no opposition to the argument. M.D. Tenn. L.R. 7.01(b).

For Mallory to prove that Caterpillar subjected her to a hostile work environment, she would have to prove (1) she belongs to a protected class; (2) "she was subject to unwelcome harassment; (3) the harassment was based on" her status as a member of the protected class; (4) "the harassment affected a term, condition, or privilege of employment; and (5) the defendant

---

[4] The transfer to the Credit Analyst position is a lateral transfer with no change in salary or benefits, so the failure to transfer is not an adverse employment action. Kocsis v. Multi-Care Mgmt., Inc., 97 F.3d 876, 885-86 (6th Cir. 1996).

[5] Even if the Court found that Caterpillar fraudulently concealed the favorable mid-2010 evaluation leading to her demotion, Mallory cannot prove that Caterpillar did so because of her race or gender. The undisputed facts include multiple employees who Caterpillar demoted, some white males, and Mallory cannot prove that she was treated differently than any other employee at Caterpillar. All she can really show is that Caterpillar treats some of its employees poorly. Further, Mallory had ample time to formally request the evaluation under Federal Rule of Civil Procedure 26(b), and to move for sanctions for failing to preserve relevant evidence under Rule 37. Mallory, for whatever reasons, did not do so—and in fact still has not done so—and the Court will not speculate the result of a motion not raised.

knew or should have known about the harassment and failed to take action." Phillips v. UAW Intern'l, --- F.3d ---, 2017 WL 1337236, at *3 (6th Cir. 2017).

The only fact in the record that Mallory potentially could constitute as "unwelcome harassment" is her 2011 claim that her managers would stand around and whisper while watching Mallory work. However, this claim is time-barred.[6] As Mallory does not present any timely facts that she was subjected to unwelcome harassment, the harassment was based on her status as a member of a protected class, or that the harassment affected a term, condition, or privilege of employment, the Court grants summary judgment on this claim.

To prove retaliation with indirect evidence, Mallory must prove "(1) [s]he engaged in activity protected by Title VII; (2) [her] exercise of such protected activity was known by the defendant; (3) thereafter, the defendant took an action that was 'materially adverse' to the plaintiff; and (4) a causal connection existed between the protected activity and the materially adverse action." Laster v. City of Kalamazoo, 746 F.3d 714, 730 (6th Cir. 2014) (quoting Jones v. Johanns, 264 Fed. Appx. 463, 466 (6th Cir. 2007)).

While Mallory may be able to establish an adverse employment action because the standard is "less onerous in the retaliation context than in the anti-discrimination context," id., Mallory cannot show a causal connection existed between her filing the EEOC charges of discrimination and the materially adverse actions after September of 2014. See Univ. of Texas SW Medical Center v. Nassar, 133 S.Ct 2517, 2532 (2013) (requiring "but-for" causation in Title VII retaliation claims). As Mallory does not argue any but-for causation, the Court grants summary judgment on this claim as well.

---

[6] Even if this claim were timely, it does not come close to the standard for harassment to make a hostile work environment claim under Title VII. See Clark v. United Parcel Serv., Inc., 400 F.3d 341, 351 (6th Cir. 2005) (discussing how severe the harassment must be to make a hostile work environment claim).

In order to establish a prima facie case of wage discrimination under the EPA, the plaintiff must show that "an employer pays different wages to employees of opposite sexes 'for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.'" Schleicher v. Preferred Solutions, Inc., 831 F.3d 746, 752 (6th Cir. 2016) (quoting Beck-Wilson v. Principi, 441 F.3d 353, 359 (6th Cir. 2006)). If the plaintiff establishes a prima facie case, the defendant bears both the burden of proof and production "that the wage differential is justified under one of the four affirmative defenses set forth under § 206(d)(1) of the Equal Pay Act: (1) a seniority system; (2) a merit system; (3) a system which measures earnings by quantity or quality of production; or (4) any other factor other than sex." Id. at 752-53 (quoting Buntin v. Breathitt Cty. Bd. of Educ., 134 F.3d 796, 799 (6th Cir. 1998)). If the defendant establishes one of the affirmative defenses, the plaintiff "'must come forward with evidence demonstrating the existence of a triable issue of fact' regarding pretext." Id. (quoting Timmer v. Mich. Dep't of Commerce, 104 F.3d 833, 844 (6th Cir. 1997)).

Assuming without deciding that Mallory met her burden on the prima facie case, Caterpillar established that the two men making a higher salary than Mallory are at that level because they used to be Level 7 employees and Caterpillar demoted them without diminishing their pay, as it did when it demoted Mallory in 2011. This is a "factor other than sex," which meets Caterpillar's burden on the affirmative defense. See Timmer v. Mich. Dept. of Commerce, 104 F.3d 833, 844-45 (6th Cir. 1997) (recognizing as an affirmative defense when there are "certain unusual, higher than normal, wage rates which are maintained for reasons unrelated to sex.") (quoting 29 C.F.R. § 1620.26 (1995)). Mallory provides no evidence of a triable issue of fact regarding pretext, so the Court grants summary judgment on this claim as well.

\

IV. CONCLUSION

For the foregoing reasons, Caterpillar's Motion for Summary Judgment (Doc. No. 28) is **GRANTED**.

The Court will issue an appropriate order.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE